UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOBOL OEUN, A-027-357-952, Petitioner, v. GOLDEN STATE ANNEX et al., Respondents. | No. 1:26-cv-04277 DC AC<br>FINDINGS & RECOMMENDATIONS |

Petitioner, an immigration detainee proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by the Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE"). ECF No. 1. Petitioner argues that his continued detention violates his due process rights because there is no significant likelihood that he will be removed in the reasonably foreseeable future, or that alternatively, his re-detention did not comply with the procedures set forth in 8 C.F.R. § 241.4(l), (or alternatively § 241.13(i)) and therefore violated the Immigration and Nationality Act ("INA"), the Administrative Procedures Act ("APA"), and due process. ECF No. 1 at 13-14, 17-18. Petitioner seeks immediate release. Id. at 19. As discussed below, the court recommends that petitioner's request for habeas relief be DENIED, and that respondents' motion to lift the court's no-transfer order (ECF No. 10) be GRANTED.

## I. Factual Background

Petitioner is a native of Thailand and citizen of Cambodia who was paroled into the United States in New York on November 8, 1984. ECF Nos. 7-2 at 3, 7-6 at 2 (Form I-213). He became a lawful permanent resident on October 24, 1986. ECF Nos. 7-2 at 3, 7-6 at 2.

DHS issued a Notice to Appear on December 10, 2007, charging petitioner as removable pursuant to section 237(a)(2)(A)(ii) because he had been convicted of two crimes (petty theft) involving moral turpitude not arising from a single scheme of criminal conduct on July 1, 2004 and December 5, 2007, respectively, in the California Superior Court for the County of San Joaquin. ECF Nos. 7-2 at 3 (Form I-862 Notice to Appear); 7-3 (Additional Charges of Inadmissibility/Deportability), 7-7 at 1-2 (December 6, 2007, Warrant for Arrest). Indeed, petitioner's criminal history includes more than fifteen convictions for theft, petty theft, vehicular theft, and shoplifting from 2004 through 2026. ECF Nos. 7-5, 7-6 at 3 (summarizing convictions).

On May 1, 2008, an Immigration Judge ("IJ") ordered petitioner removed to Cambodia, or in the alternative, to Thailand. ECF No. 7-4, 7-6 at 2. Petitioner did not appeal the IJ's decision and therefore it is administratively final. While those removal proceedings were pending, petitioner was released from DHS custody under an Order of Supervision in mid-August 2008. ECF No. 7-7 at 3-13 (Release Notification and Orders of Supervision reflecting that petitioner reported to the San Francisco ERO office annually through August 2013). Based on records provided by respondents, it appears petitioner was initially detained by ICE for approximately eight months between December 10, 2007, until at least August 12, 2008, three-and-half months of which post-dated issuance of the May 1, 2008, removal order. ECF No. 7-7 at 2-3; ECF No. 7-8 at 2 (providing that petitioner was released on "August 15, 2008" but later stopped reporting to the San Francisco ERO office).[1]

On April 28, 2026, petitioner was convicted of petty theft with two or more prior convictions and sentenced to 120 days in jail and two years of probation. ECF No. 7-5. When

[1] Petitioner did not express fear of returning to his country of citizenship. ECF No. 7-8.

petitioner was scheduled for release from the San Joaquin County Jail on May 5, 2026, ICE took petitioner into custody on charges of violating conditions of release pending deportation. ECF No. 7-6 at 1-2, 7-9. He has remained in ICE custody since that time, approximately three-and-a-half months, and is currently detained at the Golden State Annex in McFarland, California. ECF No. 1 at 2.

II. Notice of Revocation and Opportunity to Respond

Petitioner was issued a Notice of Revocation of petitioner's August 9, 2013, Order of Supervision dated May 4, 2026. ECF No. 7-9 at 1-2. The Notice advised petitioner that his supervised released had been revoked pursuant to 8 C.F.R. § 241.4(l) based on his recent conviction for violating California Penal Code § 666.1(A)(1), and that ICE was enforcing the removal order entered against him by seeking a travel document to effectuate his removal to Cambodia. ECF No. 7-9 at 1. The notice further advised petitioner that on May 5, 2026, he would be afforded an informal interview at which he will be given an opportunity to respond to the reasons for this revocation, and that he may submit any evidence or information he wishes to be reviewed in support of his release. Id. at 2. Petitioner acknowledged receipt of this document with his signature on May 5, 2026. Id.

According to respondents, "ICE conducted the requisite interview of Petitioner to apply for a travel document" to Cambodia on May 22, 2026. ECF No. 7-1 at ¶ 10 (Follert Decl.). Petitioner also completed an interview sheet requested by Cambodia on June 17, 2026. ECF No. 7-1 at ¶ 11 (Follert Decl.). Petitioner's travel documents to effectuate his removal to Cambodia were issued on August 6, 2026. ECF No. 10-2.

III. Procedural History

Petitioner filed the instant habeas petition on June 4, 2026, seeking his immediate release from confinement. ECF No. 1. Petitioner's first ground for relief alleges that his continued detention violates his due process rights. Id. at 13 (citing Zadvydas v. Davis, 533 U.S. 678 (2001)). Because petitioner has been detained more than the presumptive period of six months, petitioner argues that he is eligible for conditional release because there is no significant

likelihood of removal in the reasonably foreseeable future. Id. at 13-14.[2]

Finally, petitioner alleges in his fourth ground for relief that his re-detention did not comply with the procedures set forth in 8 C.F.R. § 241.4(l) (or alternatively 8 C.F.R. § 241.13(i)) and therefore violated the Immigration and Nationality Act ("INA"), the Administrative Procedures Act ("APA"), and due process. ECF No. 1 at 17-18. He argues that ICE's failure to afford him with an interview and opportunity to respond consistent with the regulations violated his right to due process (id. at 18), and that when his release was revoked, "ICE did not have a warrant [for] an arrest, or provide me with any notice of my redetention. They did not provide me or notify me of any travel documents." Id. at 2.

On June 8, 2026, the court directed respondents to file a response to the petition and substantively address whether there are any factual or legal issues that materially distinguish this case from Pham v. Warden, No. 1:25-cv-1873 DC AC, __ F. Supp. 3d __, 2026 WL 849861 (E.D. Cal. Mar. 27, 2026), and other similar cases previously decided by this court. ECF No. 6. The court also ordered respondents not to transfer petitioner outside of this judicial district, pending further order of the court. Id.

Respondents filed an opposition on June 23, 2026, arguing that petitioner was re-detained pursuant to 8 U.S.C. § 1231(a)(6) after petitioner violated the conditions of his release by committing a violation of California Penal Code Section 666.1(A)(1) and to effectuate his removal. ECF No. 7 at 1. Respondents assert that petitioner was given the requisite notice of the basis for revocation of his release on May 4, 2026, in the Notice of Revocation. Id. at 2. In addition, on May 22, 2026, "ICE conducted the requisite interview of Petitioner to apply for a travel document." Id.

Finally, respondents argue that this case is distinguishable from this court's decision in Pham, 2026 WL 849861 (E.D. Cal. Mar. 27, 2026), because petitioner's violation of the

[2] Grounds two and three of the habeas petition assert claims relating to punitive deportations and banishments to third countries not specified on a noncitizen's removal order, which appear inapplicable to petitioner. ECF No. 1 at 3-6, 9-16. Petitioner is being removed to Cambodia, a country specified in his removal order and of which he is a citizen. Travel documents have been issued. Thus, grounds two and three of the petition do not entitle petitioner to the relief he seeks and it is unnecessary to discuss them in greater detail.

conditions of his release is an independent basis for re-detention regardless of which regulation applies, 8 C.F.R. §§ 241.13(i)(1) or 241.4(l)(1), and no "determination of changed circumstances" under 8 C.F.R. §§ 241.13(i)(2) is required "which was the basis of that decision." ECF No. 7 at 2. "Here, Petitioner's criminal conviction alone is sufficient under the regulations to justify his re-detention. The detaining officer applied 8 C.F.R. § 241.4(l)(1)[.]" Id. (citing ECF No. 7-9 (Notice of Revocation of Release)). Even if, however, "the court finds that § 241.13 is the appropriate authority, as it did in Pham, that regulation provides that upon revocation for a violation of the conditions of release, '[t]he alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.'" Id. (quoting 8 C.F.R. § 241.13(i)(1)). At the time of respondents' filing, they noted "ICE is working to expeditiously remove Petitioner to Cambodia and substantial progress has been made toward that end" since petitioner's re-detention. Id. at 2.

Petitioner did not file a reply to respondents' opposition. On August 19, 2026, respondents also filed a motion asking the Court to lift the no-transfer order issued on June 8, 2026 (ECF No. 6) because ICE has received petitioner's travel documents from Cambodia (ECF No. 10-2 (travel documents)) and is ready to effectuate petitioner's removal order. ECF No. 10.

IV. Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)). In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004). "District courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order[.]" Lopez-Marroquin v. Barr, 955 F.3d 759 (9th Cir. 2020) (citation omitted); see also Zadvydas, 533 U.S. at 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and

constitutional challenges to post-removal-period detention.").

V. Discussion

A. Ground One: Prolonged Detention Under the Fifth Amendment

Petitioner's first ground for relief alleges that his continued detention violates his due process rights. ECF No. 1 at 13 (citing Zadvydas v, 533 U.S. 678 (2001)). Because petitioner has been detained more than the presumptive period of six months, petitioner argues that he is eligible for conditional release because there is no significant likelihood of removal in the reasonably foreseeable future. Id. at 13-14.

Detention of non-citizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). The statute provides that when a non-citizen is ordered removed, they shall be removed within ninety days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). During the removal period, the noncitizen shall be detained. 8 U.S.C. § 1231(a)(2). "[Section] § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After the 90 day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.S.C. § 1231(a)(6)). The second category includes noncitizens ordered removed under 8 U.S.C. § 1227(a)(2) based on their criminal offenses, including aliens "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct[.]" 8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court held that 8 U.S.C. § 1231(a)(6), "read in light of the Constitution's demands, limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." Zadvydas, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized a

period of six months to be a "presumptively reasonable period of detention." Id. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

As a threshold matter, the parties appear to disagree regarding whether petitioner's detention post-final order of removal has extended beyond the presumptive six-month period and whether his current detention shows no significant likelihood that he will be removed in the reasonably foreseeable future. ECF No. 1 at 2 (Petitioner's assertion he was previously detained for "about nine (9) months" and ICE "did not provide me or notify me of any travel documents"); ECF No. 7 at 2 (Respondents referencing the "substantial progress" made toward removing petitioner to Cambodia during the "short month and a half that Petitioner has been in ICE detention").

Courts within the Ninth Circuit have found that the period of post-final removal order detention is cumulative. See, e.g., Pham v. Warden, No. 1:25-CV-01873-DC-AC (HC), 2026 WL 849861, at *5, fn. 1 (E.D. Cal. Mar. 27, 2026) (collecting cases); Nguyen v. Scott, 796 F. Supp. 3d 703, 721-22 (W.D. Wash. 2025) (rejecting argument that detention clock restarts with each re-detention and finding detention not presumptively reasonable based on aggregate period of confinement); Jaranow v. Bondi, 819 F.Supp.3d 1229, 1236 (W.D. Wash. 2026) (courts in Ninth Circuit have found "six-month period of detention need not be consecutive to reach the limit established in Zadvydas" (collecting cases)); Shaltapur v. Cantu, No. CV 25-3995 PHX DWL (CDB), 2025 WL 3724470, at *4 n.4 (D. Ariz. Dec. 18, 2025) (district courts within Ninth Circuit aggregate periods of detention) (collecting cases); Asfestani v. Current or Acting Field Off. Director, No. 1:25-cv-1562 SCR, 2025 WL 3677321, at *4 (E.D. Cal. Dec. 18, 2025). "In fact, looking beyond the Ninth Circuit, '[m]ost courts to consider the issue have concluded that the Zadvydas period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them.'" Phan v. Warden of Otay Mesa Det. Facility, 813 F.Supp.3d 1179, 1184 (S.D. Cal. 2025) (alteration in original) (collecting cases).

The court finds that petitioner's cumulative detention exceeds the six-month "presumptively reasonable" period identified by the Supreme Court in Zadvydas. To date, petitioner's current detention has lasted approximately three-and-a-half months. As noted above, he was previously detained by ICE for approximately eight months before he was released on an order of supervision, which brings his cumulative detention to approximately eleven-and-a-half months. Even if the duration of his post-removal-period detention is calculated by adding his current period of confinement to the three-and-a-half months between the May 1, 2008 Order of Removal (which petitioner did not appeal) and petitioner's release on supervision on or about August 15, 2008 instead, petitioner's cumulative detention is at least seven months. ECF No. 7-7 at 2-3; ECF No. 7-8 at 2.

As noted above, because seven months is not a "presumptively reasonable period of detention" under Zadvydas, the court next considers whether there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and if so, "the Government must respond with evidence sufficient to rebut that showing." 533 U.S. at 689. On the record before the court, which includes a copy of petitioner's travel documents issued by Cambodia (ECF No. 10-1) and representation from respondents that the government "may now execute petitioner's removal order, but for this Court's [no-transfer] order," the court cannot conclude that there is no significant likelihood of removal in the reasonably foreseeable future. Accordingly, petitioner is not entitled to habeas relief on ground one of his petition. ECF No. 1 at 13-14.[3] The court turns next to petitioner's remaining ground for relief.

B. Ground Four: Revocation of Petitioner's Release under the Regulations

Petitioner contends that respondents violated 8 C.F.R. § 241.4(l) (or alternatively, 8 C.F.R. § 241.13(i)) when they revoked petitioner's release and re-detained him on May 5, 2026. ECF No. 1 at 8, 17-18. Specifically, petitioner argues 8 C.F.R. § 241.4(l) and 8 C.F.R. § 241.13(i)(3) both require ICE to provide an informal interview promptly to afford him an

[3] For the sake of efficiency, the undersigned will not discuss grounds two or three raised in the petition (ECF No. 1 at 3-6, 9-16) as they present arguments inapplicable to petitioner, who is not being deported to a third country not specified in his removal order.

opportunity to respond to the reasons for revocation and "ICE's failure to afford such an interview violates Petitioner's right to due process." Id. at 18. He asserts ICE failed to "provide me with any notice for my redetention. They did not provide me or notify me of any travel documents." Id. at 2.

In arguing that respondents failed to comply with the regulations, petitioner applies both 8 C.F.R. § 241.4(l) and 8 C.F.R. § 241.13(i)(3), presumably because he was unsure which provision respondents applied. However, because the Notice of Revocation provided by respondents cites 8 C.F.R. § 241.4(l) as the basis for the revocation of petitioner's release, the court will apply that provision to this analysis.[4] ECF No. 7-9 at 1.

DHS and ICE, like all other agencies, are required to follow their own regulations. Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("ICE, like any agency, 'has the duty to follow its own regulations.'" (quoting Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003))); United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations." (citation omitted)). Section 241.13 of Title 8 was added to the Code of Federal Regulations after the decision in Zadvydas to incorporate the constitutional limitations on detention of noncitizens after the expiration of the 90-day removal period under 8 U.S.C. § 1231(a). See Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967, 56967-70 (Interim Rule Nov. 14, 2001) ("In light of the Supreme Court's decision in Zadvydas, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained [noncitizen] after the expiration of the removal period."); see also Zadvydas, 533 U.S. at 690, 699-700. Failure to adhere to "a regulation [that] is promulgated to protect a fundamental right derived from the Constitution or a federal statute," invalidates the challenged action. See Rombot, 296 F. Supp. 3d at 388 ("[W]here an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere

[4] The analysis under either provision would be the same because 8 C.F.R. § 241.4(l) and 8 C.F.R. § 241.13(i)(3) contain identical language regarding the notice and interview requirements for revocation of release.

to it, the challenged [action] is invalid.'" (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)).

"Noncitizens subject to a final removal order may be released pursuant to 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13." Vishal v. Chestnut, 811 F.Supp.3d 1179, 1185 (E.D. Cal. 2025) (citing Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 159, n.22 (W.D.N.Y. 2025)); Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1162 (S.D. Cal. 2025) (the government promulgated 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 governing the release of noncitizens with final orders of removal). The same regulations govern the revocation of said release. Vishal, 811 F.Supp.3d at 1185-86; Constantinovici, 806 F. Supp. 3d at 1162. Specifically, the release of noncitizens subject to terms of supervision and the revocation of such release is governed by 8 C.F.R. § 241.4 where there has not been a determination regarding likelihood of removal, or 8 C.F.R. § 241.13 where there is a determination of no significant likelihood of removal in the reasonably foreseeable future.

Under § 241.4(l), release may be revoked when (1) the purposes of release have been served; (2) the alien violates any condition of release; (3) it is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate. 8 C.F.R. § 241.4(l)(2). By contrast, under § 241.13, release can be revoked only when the noncitizen violates a condition of release or alternatively, when "on account of changed circumstances" it is determined "that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). Both provisions require that the noncitizen "will be notified of the reasons for revocation of his or her release" and have "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3); see also Diaz v. Wofford, No. 1:25-cv-1079 JLT EPG, 2025 WL 2581575, at *5 (E.D. Cal. Sept. 5, 2025) (notice and interview requirements of § 243.4(l)(1) apply to revocation of release under § 241.4(l)(2) (citations omitted)).

Revocation procedures are delineated in 8 C.F.R. § 241.4(l)(1), which provides that an alien "who has been released under an order of supervision or other conditions of release who

violates the conditions of release may be returned to custody . . . Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." Accordingly, revocation of release requires the following three procedures: (1) notice of the "reasons for revocation," (2) a "prompt" initial informal interview after re-detention, and (3) an opportunity to respond to the reasons stated for revocation.

Here, respondents contend that petitioner's release was revoked and he was re-detained in part because petitioner violated the conditions of release by committing a violation of California Penal Code § 666.1(A)(1). ECF No. 7 at 2. Indeed, the detaining officer advised petitioner in the Notice of Revocation of Release that his release on an Order of Supervision was being revoked pursuant to 8 C.F.R. § 241.4(l) because "you have violated the conditions of your release by being Convicted in [t]he California Superior Court, County of San Joaquin for California Penal Code 666.1(A)(1)." ECF No. 7-9 at 1. Petitioner was further advised that ICE deemed it "appropriate to enforce the removal order entered against you as ICE has the ability and mean to effected your removal" and "ICE is seeking a travel document to effectuate your expeditious removal to Cambodia." Id. This case is therefore distinguishable from other decisions from this court, like Pham v. Warden, No. 1:25-CV-01873-DC-AC (HC), 2026 WL 849861, at *11-12 (E.D. Cal. Mar. 27, 2026), which held that the government relied on "changed circumstances" in 8 C.F.R. §§ 241.13(i)(2) to revoke release but had failed to satisfy their burden. See also Osorto-Coello v. Warden of California City Det. Facility, No. 1:26-CV-3231 DC AC, 2026 WL 1470603, at *1 (E.D. Cal. May 26, 2026), report and recommendation adopted sub nom. Osorto-Coello v. Warden of the California City Det. Facility, No. 1:26-CV-03231-DC-AC (HC), 2026 WL 1669083 (E.D. Cal. June 9, 2026) (holding that respondents failed to satisfy their burden by providing sufficient notice of the reasons for the revocation or a prompt interview as required by 8 C.F.R. § 241.4(l)); Constantinovici, 806 F. Supp. 3d at 1165 (finding petitioner was not given any notice of the reasons for his re-detention for a month after his arrest and no informal interview for at least six weeks after his arrest).

Contrary to petitioner's arguments, the records submitted by respondents do reflect that petitioner was provided with timely notification of the reasons for his revocation of release (primarily his violation of his conditions of release based on his most recent criminal conviction), as well as a prompt interview to afford him an opportunity to respond to the reasons stated in the notification, consistent with 8 C.F.R. § 241.4(l)(1). Petitioner's Notice of Revocation of Release, dated May 4, 2026, indicates petitioner would be provided an informal interview on May 5, 2026, at which he would be provided an opportunity to respond to the reasons for revocation stated in the notification and submit any evidence or information to be reviewed, and that ICE was obtaining travel documents for petitioner to Cambodia. ECF No. 7-9 at 2. Petitioner signed this document on May 5, 2026, suggesting that the informal interview also took place on that date. Id. Even if this is incorrect, however, respondents indicated that ICE conducted the requisite interview of petitioner to apply for a travel document to Cambodia on May 22, 2026. ECF No. 7-1 at ¶ 10 (Follert Decl.). As noted above, petitioner's travel documents to effectuate his removal to Cambodia have been issued. ECF No. 10-2.

Petitioner's assertion that ICE failed to "provide me with any notice for my redetention" or notify him about any travel documents does not appear to be accurate. ECF No. 1 at 2. On the present record, the court cannot conclude that respondents failed to afford petitioner the procedures required by the regulations, including adequate notice, an opportunity to respond to the reasons for revocation of his supervised release, and a prompt informal interview. Because the court does not find that respondents violated the regulations, the court also does not find a violation of petitioner's due process rights on this basis.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) be DENIED;
2. Respondents' motion to lift no transfer order (ECF No. 10) be GRANTED; and
3. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds

that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Within **fourteen days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 25, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE